**Mae Otha GARDNER, Plaintiff,**

v.

**COFFEEVILLE SCHOOL DISTRICT, The Board of Trustees of the Coffeeville School District, Virgil Dean, Carlos Booker, Eddie Brower, Anita Holloway and James Horton, Individually and in their Official Capacities, and Aubrey Ray, Superintendent, in his Individual and Official Capacity, Defendants.**

No. 3:96CV118–A.

United States District Court,
N.D. Mississippi,
Western Division.

Oct. 1, 1997.

---

2. We have omitted any discussions of the law of Louisiana since it is to the same effect as that of the Miller Act.

Patricia A. Hancock, Hancock & Hancock, Jackson, MS, for Plaintiff.

James A. Keith, Adams and Reese, Jackson, MS, for Defendants.

## *OPINION*

ALEXANDER, United States Magistrate Judge.

Plaintiffs in the above-styled case were employees of the Coffeeville School District during the scholastic years of 1994 through 1996. Plaintiff Gardner served as an elementary school principal, and plaintiff Jenkins served as a high school principal. Before the court are the following contracts: Gardner's contract of employment for the 1994–95 scholastic year executed on August 29, 1994;[1] Jenkins' contract of employment for the 1994–95 scholastic year executed on July 5, 1994;[2] Gardner's employment contract for the 1995–96 scholastic year executed on June 8, 1995;[3] and Jenkins' employment contract of 1995–96 scholastic year executed on June 14, 1995.[4] The parties have requested that

---

1. BRIEF OF PLAINTIFFS, Exhib. K. At the outset, the court notes that the exhibits submitted with plaintiffs' motion were not properly incorporated as part of the record in this case. Nevertheless, the parties submitted this issue to the court by agreement, and there has been no objection for failure to authenticate exhibits or otherwise, thus any such objection would be waived. *See Davis*

*v. Howard,* 561 F.2d 565, 569–70 (5th Cir.1977) (citations omitted).

2. BRIEF OF PLAINTIFFS, Exhib. H.

3. BRIEF OF PLAINTIFFS, Exhib. L.

4. BRIEF OF PLAINTIFFS, Exhib. I.

the court decide the issues involved in this case on the basis of their respective memorandum briefs. The district court's jurisdiction over these claims rests upon 28 U.S.C. § 1441 in that they were removed to this court, which would have had original jurisdiction under 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), all parties consented to have a United States magistrate judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and dispose of this case.

The minutes of the Coffeeville School Board ("the Board") dated February 14, 1994[5] reflect that the Board that day elected to approve a salary schedule for the four school principals in the district.[6] After approving the salary schedule, the Board voted to accept the recommendation of the superintendent to hire plaintiffs as principals for the 1994–95 school year "with reservations."[7] The plaintiffs' contracts for the 1994–95 scholastic year, which provided that Gardner would earn $35,246.00 and Jenkins would earn $41,788.00, were not signed until August 29, 1994 and July 5, 1994 respectively. The salaries were based upon minimum state rates and did not include the supplemental payment contemplated by the salary schedule. Plaintiffs do not contend they were entitled to the scheduled amounts during 1994–95.

■ On February 14, 1995, the Board met again, and the minutes of that meeting reflect that the superintendent recommended Jenkins and Gardner be re-employed for the 1995–96 school year "with salaries to be set at a later time."[8] The superintendent's motions were seconded and passed by a vote of the board members. On June 8 and June 14, 1995 respectively, Gardner and Jenkins signed contracts for employment during the 1995–96 school year at exactly the same rates of pay they had received for employment during the preceding school year. Again, the salary schedule for administrative personnel would have called for the salaries for Gardner's and Jenkins' positions to surpass those contained in the actual contracts of employment. Had their salaries been calculated using the salary schedule, plaintiffs contend Gardner would have received approximately $36,707 and Jenkins would have received approximately $44,865. Plaintiffs now contend that they were entitled to salaries during the 1995–96 school year at a rate equal to the amounts provided by the salary schedule. Plaintiffs present the court with what amounts to a due process claim, and plaintiffs, of course, have the burden of proving that defendants deprived them of due process. The due process clause protects against governmental deprivations of life, liberty or property, and the Supreme Court has made it clear that a vested property interest in one's job is indeed protected by the due process clause. See *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (citations omitted). Although the "Constitution, standing alone, confers no property right in continued employment," *Harrison County School Board v. Morreale,* 538 So.2d 1196, 1200 (Miss.1989) (citations omitted), a property right can arise pursuant to state law, and once a property right is created it is subject to constitutional protection. The property right may be contractual, but "[w]here there is no express contract of employment, a valid claim of entitlement must be grounded in some other legal source, such as a state statute or local ordinance, or an implied contract." *Id.*

■ The question in the instant case is whether plaintiffs had a property right not only in continued employment, but in employment at a rate provided in the salary schedule. The court looks first to the actual written contracts of employment. Plaintiffs' express contracts for the 1995–96 scholastic

---

**5.** BRIEF OF PLAINTIFFS, Exhib. A.

**6.** BRIEF OF PLAINTIFFS, Exhib. G.

**7.** BRIEF OF PLAINTIFFS, Exhib. A. The court is unable to determine the exact meaning of the phrase "with reservations." However, the February 14, 1995 minutes also reflect that the motion to again re-employ Jenkins was expressly "with reservations stipulating that if student test scores and student behavior did not show a marked improvement during the 1995–96 school [year] she would not be employed for the 1996–97 school year." BRIEF OF PLAINTIFFS, Exhib. C.

**8.** BRIEF OF PLAINTIFFS, Exhib. C.

year do not, by their terms, entitle plaintiffs to anything more than the same salaries they had received in 1994–95. It is beyond doubt that the schedule was not used to calculate plaintiffs' salaries for the 1994–95 school year, although the schedule was in existence prior to execution of plaintiffs' 1994–95 contracts. Thus, plaintiffs' due process claim would fail under the express contract prong of the *Harrison County School Board* case.

■ Nor can the court accept plaintiffs' argument that Mississippi statutory law created their entitlement to the amounts in the salary schedule. Under Mississippi law, if a school board does not intend to offer an employment renewal contract to any teacher or administrator for the upcoming scholastic year, it is required to notify the individual by a certain date in order that the educator may seek employment elsewhere. MISS.CODE ANN. § 37–9–105 (1996).[9] If there is no notice of termination, employment is deemed to continue for one year at the previous year's rate. *Jackson v. Board of Education of Oktibbeha County*, 349 So.2d 550, 553 (Miss. 1977). The statutory provision for "automatic renewal of [the] outstanding contract for the ensuing year, including compensation specified therein" is intended to prevent school officials from ignoring the statutory notice requirement with impunity. *McDonald v. East Jasper County School District*, 351 So.2d 531, 533 (Miss.1977) (citations omitted). Plaintiffs clearly had a constitutionally protected property interest in a right to automatic renewal of employment for one year in the absence of timely notice of intent to do otherwise.

The Board in this case, however, did comply with the notice requirement found in the statutes by making plaintiffs an offer of continued employment for the 1995–96 school year, and subsequently the plaintiffs actually executed written contracts for the upcoming school year. Therefore, the *McDonald* case, which interprets the statute's remedy for ineffective notice, does not come into play at all. Moreover, even if the Board's notice of the offer of reemployment had been ineffective for some reason, *e.g.* for not including a

specific salary, and the statutes had been applicable, all the plaintiffs could realistically assert entitlement to under § 27–9–105 would be an amount commensurate with the amounts in their prior contracts, which they in fact received. As stated above, plaintiffs' 1994–95 contracts calculated plaintiffs' salaries without reference to the salary schedule.

■ The court is left to search for an implied contract term in either the contracts themselves or a separate implied contract which created the property interest alleged. Plaintiffs fail on this third prong as well. The Mississippi Supreme Court has stated that "[a]ny conduct of one party from which the other party may reasonably draw the inference of a promise is effective in law as such, and conduct of the parties is to be viewed as a reasonable man would view it to determine the existence or not of an implied in fact contract." *Cooke v. Adams*, 183 So.2d 925 (Miss.1966) (quoting 17 C.J.S. *Contracts* § 4). Plaintiffs could not have had a legitimate expectation of receiving the scheduled amounts instead of the amounts included in the written contracts in light of the fact that the salary schedule was in place prior to execution of the 1994–95 contracts, yet it was not used to calculate plaintiffs' salaries in those contracts. Moreover, plaintiffs signed their written contracts for 1995–96, and "[i]n a contract which purports to be complete, prior or contemporaneous negotiations are merged into the completed contract." *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So.2d 938, 946 (citing *Continental Gin Co. v. Freeman*, 237 F.Supp. 240, 244–45 (N.D.Miss.1964), *aff'd*, 381 F.2d 459 (5th Cir. 1967)). Plaintiffs contend they signed the contracts "under protest in that they disagreed with the salary as set forth and that they reserved the right to protest this element of the contract."[10] Because there is absolutely no evidence of this alleged fact in the record, the court is constrained to reject this argument. Plaintiffs certainly made no note of their protest on the contracts themselves. Mississippi contract law prohibits the court from looking outside the express

---

**9.** If the employee is a principal, this nonreemployment notice must be given at least by March 1. MISS.CODE ANN. §§ 37–9–15, –17 and –105 (1996).

**10.** BRIEF OF PLAINTIFFS, p. 4.

contracts here because "[o]nly if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent." *Heritage Cablevision v. New Albany Electric Power System of City of New Albany,* 646 So.2d 1305, 1313 (Miss.1994); *see Weatherford v. Martin,* 418 So.2d 777, 778 (Miss.1982). Because the contracts at issue here are unambiguous, the court is prohibited from looking beyond the actual terms of the contracts, either express or implied.

 Plaintiffs argue that the Board had authority to and did adopt a salary schedule which became district "policy," then the Board made the policy a matter of public record and distributed it to the employees in the district. In *Weatherford,* teachers brought suit to modify contracts they had entered and claimed that the Superintendent of Education had improperly computed their salaries according to a salary schedule. The court reasoned, however, that the method used to apply the schedule was district "policy," and the plaintiffs knew of its existence, thus the court rejected the teachers' argument that it should disregard established policy and modify written contracts calculated in accordance to the teachers' interpretation of the schedule. *Weatherford,* 418 So.2d at 778. Plaintiffs argue that *Weatherford* is analogous to this case. In the instant case, however, the court does not possess the same sort of evidence that was before the *Weatherford* court. The salary schedule at issue here is not accompanied by a description of the Board's "policy" for its application.[11] The minutes in the record lack a detailed description of the Board's policy or intent for implementing the schedule, and the court has no other evidence in this respect. Plaintiffs' argument to the contrary notwithstanding, the *Weatherford* decision does not require that this court find in their favor.

On the basis of the evidence before the court, it is impossible to conclude that plaintiffs had a property interest in receiving scheduled salaries based upon an express or implied contract or upon Mississippi statuto-ry law. Therefore, they were not deprived of due process, and their claims should be dismissed with prejudice. A separate order in accordance with this opinion shall issue this day.

### FINAL JUDGMENT

In accordance with the memorandum opinion issued this day, it is hereby **ORDERED AND ADJUDGED:**

That judgment is granted for defendants Coffeeville School District, the Board of Trustees of the Coffeeville School District, board members Virgil Dean, Carlos Booker, Eddie Brower, Anita Holloway, James Horton, and Superintendent Aubrey Ray in their individual and official capacities. Plaintiffs' claims are dismissed with prejudice, and each party is to bear its own costs.

---

11. Although defendants submitted affidavits of individual Board members to the effect that the Board only intended educators to receive the raises specified in the schedule if the district was financially sound, the court cannot accept this testimony as that of the Board because the Board can communicate only through orders placed in the minutes of its meetings. *Nichols v. Patterson,* 678 So.2d 673, 678 (Miss.1996) (citations omitted).